# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Marvin Aspen | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 02 C 6925 | **DATE** | 4/13/2004 |
| **CASE TITLE** | USA ex. rel. James Munson vs. Eugene McAdory, Warden | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m)   ☐ Local Rule 41.1   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Enter Memorandum Opinion and Order: Munson's petition for a writ of habeas corpus pursuant to 28 USC §2254 is denied. Any pending motions are denied as moot. The status hearing set for 4/27/04 is stricken.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | | |
|---|---|---|---|---|---|
| | No notices required, advised in open court. | | | **number of notices** | **Document Number** |
| | No notices required. | | | APR 1 4 2004 | |
| ✓ | Notices mailed by judge's staff. | | | **date docketed** | |
| | Notified counsel by telephone. | | | | 26 |
| | Docketing to mail notices. | | | **docketing deputy initials** | |
| ✓ | Mail AO 450 form. | | | 4/13/2004 | |
| | Copy to judge/magistrate judge. | | | **date mailed notice** | |
| GL | courtroom deputy's initials | | Date/time received in central Clerk's Office | GL mailing deputy initials | |

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

United States of America ex rel.　）
JAMES MUNSON, (#N-95249),　）
　）
　　　Petitioner,　）
　）
　v.　）
　）　No. 02 C 6925
　）
EUGENE McADORY,[1] Warden,　）
Menard Correctional Center,　）
　）
　　　Respondent.　）
　）

## MEMORANDUM OPINION AND ORDER

Marvin E. Aspen, District Judge:

On June 10, 1993, following a jury trial in the Circuit Court of Cook County, habeas

petitioner James Munson ("Munson") was convicted of murder, armed robbery, aggravated

kidnaping and arson, in connection with the murder of Marvin Cheeks ("Cheeks"). Following

the conviction, the trial court judge sentenced Munson to death. On January 11, 2003, former

Governor George Ryan commuted Munson's sentence to natural life imprisonment. Munson

filed his petition for habeas corpus with this court on June 20, 2003. The petition does not

contain any claims challenging Munson's sentence, for those would be moot. *See, e.g., Wilson v.*

*Mote*, No. 03-1943, slip op. at 1 (7th Cir. June 18, 2003) (mooting all sentencing claims post-

---

[1] The petitioner is currently incarcerated at Menard Correctional Center. Because Eugene McAdory is the warden at Menard, he is the proper respondent in this habeas action. *See* Rule 2(a) of the Rules Governing Habeas Corpus Cases under 28 U.S.C. § 2254. Therefore, this court substitutes McAdory as the respondent. *See* Fed. R. Civ. P. 25(d)(1).

commutation). For the reasons set forth in this memorandum opinion and order, the court denies his petition in its entirety.

I.    **BACKGROUND**

   A.    **PROCEDURAL HISTORY**

On June 10, 1993, a Cook County jury convicted Munson of first degree murder, armed robbery, aggravated kidnaping and arson. Munson waived jury sentencing, and the trial court judge, the Honorable Shelvin Singer, sentenced him to death. Following the conviction and sentence, Munson appealed directly to the Illinois Supreme Court, which affirmed the trial court's decision. *See People v. Munson*, 171 Ill.2d 158 (1996) ("*Munson I*"). The U.S. Supreme Court denied Munson's petition for writ of *certiorari*. *See Munson v. Illinois*, 519 U.S. 880 (1996).

Munson, acting *pro se*, then filed a petition for post-conviction relief with the Circuit Court of Cook County. He followed this filing with an amended petition and several supplements thereto, acting both *pro se* and with the assistance of counsel. The circuit court dismissed these petitions without holding an evidentiary hearing, and the Illinois Supreme Court affirmed the dismissal, and, on August 29, 2002, denied Munson's request for rehearing. *See People v. Munson*, 206 Ill.2d 104 (2002) ("*Munson II*").

He then filed his petition for writ of habeas corpus with this court on June 20, 2003. Because this is Munson's first petition for habeas corpus relief and he filed it within one year of the conclusion of his state post-conviction proceedings, this court has jurisdiction to consider the petition. *See* 28 U.S.C. § 2244(b), (d)(1), & (d)(2); *Gray v. Briley*, 305 F.3d 777, 778-79 (7th Cir. 2002).

Munson does not challenge the findings of fact as set forth by the Illinois Supreme Court in both of its opinions affirming the conviction and sentence. Therefore, this court will presume that those facts are correct for purposes of collateral review. *See* 28 U.S.C. § 2254(e)(1); *Ward v. Sternes*, 334 F.3d 696, 703 (7th Cir. 2003) (habeas petitioner can rebut presumption with clear and convincing evidence). Thus, the court adopts the recitation of facts as set forth by the Illinois Supreme Court in Munson's direct and post-conviction appeals. *See Munson I*, 171 Ill.2d at 167-75; *Munson II*, 206 Ill.2d at 112-15.

## B. PRE-TRIAL AND TRIAL PROCEEDINGS

Prior to trial, the State used peremptory challenges to excuse three African-American venirepersons from the pool of potential jurors. Munson raised a claim under *Batson v. Kentucky*, 476 U.S. 79 (1986), alleging that the State violated his rights to equal protection by excluding venire members based on race. The court found a pattern of excluding African-American jurors, but ultimately found that the State's proffered reasons did not demonstrate a discriminatory intent. Thus, Munson's objections ultimately failed. The jury that was eventually seated consisted of two African-Americans and ten Caucasians.

At trial, Paramedic Kerry Pakucko ("Pakucko") testified that early in the morning of October 5, 1991, she and her partner discovered a car engulfed in smoke on Chicago's west side. After approaching the car, they noticed the body of a man lying face down in a pool of water under a viaduct. They subsequently discovered a bullet hole in his back, and determined that the man was dead. Pakucko and her partner flagged down a Chicago police officer who was patrolling the area. A crime scene technician recovered a copper bullet jacket from the front passenger area of the vehicle. Eventually the car was identified as belonging to Cheeks, and the

3

cause of the fire was determined to be arson. Medical examiners identified the deceased as Marvin Cheeks.

Kenny Curry ("Curry"), an acquaintance of Munson's, testified that, on October 6, 1991, he was working on his car at the home of his friend Kenny Burks ("Burks"), another acquaintance of Munson. Munson came over, and Curry noticed burn marks and grease on his face. Munson told Curry about the events of the prior evening, explaining that he shot Cheeks once and then a second time after Cheeks attempted to escape from the vehicle. He then purchased some gasoline and returned to the car to burn Cheeks' truck, burning his own face in the process.

Curry further testified that he learned Cheeks was the brother of Maurice Cheeks, a professional basketball player. Curry did not know the victim, but made plans with a friend to attend the funeral, with the hope of meeting Maurice Cheeks. The Cheeks family had posted a reward for information about Cheeks' murder; Munson's allegation is that this is what motivated Curry and Burks to attend the funeral and approach Cheeks' family. He also alleges that the State hid this 'material' information from the jury. Curry had not yet contacted the police about Munson's story. He and Burks attended Cheeks' funeral, and told some of Cheeks' family members about the circumstances surrounding his death.

Detective James Hanrahan ("Hanrahan"), who, along with his partner Mike Miller ("Miller"), had been assigned to investigate the Cheeks murder, testified that on October 8, Hanrahan received a call from a member of the Cheeks family, who wished to meet with him

about the murder. Hanrahan and Miller met with Burks, Ricky Vivurette[2] ("Vivurette"), and this unidentified member of the Cheeks family. Following the meeting, Hanrahan and Miller arranged to conduct a mobile surveillance of Burks' car. They followed Burks until Munson approached Burks' car to speak with him. Eventually, Munson joined Burks and Vivurette in the vehicle. Munson had retrieved a gun from his apartment.[3] Hanrahan and Miller followed the vehicle, and, some time later, stopped the car. They ordered all three men out of the car, and proceeded to search the interior. Miller discovered Munson's weapon, a .357 Magnum Colt revolver, in the car's back seat. He then handcuffed Munson and advised him of his *Miranda* rights.

After again advising Munson of his *Miranda* rights, Hanrahan and Miller interviewed him in an interrogation room. Munson initially denied knowing Cheeks or anything about the crimes. He kept denying any knowledge until Burks was brought into the interrogation room. After Burks repeated what he learned from Munson, Munson finally agreed to tell the police what happened.

According to Detective Hanrahan, Munson noticed Cheeks sleeping in his car. Munson approached the car with his gun drawn, and entered the back seat. He took some money from Cheeks' back pocket, then ordered him to drive. At some point, Munson ordered Cheeks to stop the car. Cheeks tried to get the gun from Munson, and, during this scuffle, the gun discharged,

---

[2] The nature of Vivurette's relationship with Munson, Burks and Curry is unclear. It appears that he is an acquaintance of all three. The record also includes at least two different spellings of Vivurette's name, both of which differ from the spelling used in the Illinois Supreme Court decisions. In the interest of consistency, the court will use the "Vivurette" spelling.

[3] It is not clear whether Munson retrieved the gun from his own apartment, or simply from another residence he had access to.

shooting Cheeks. Detective Gene Harris ("Harris") and Assistant State's Attorney Charles Burns ("Burns") also testified about Munson's police station interview.

Harris and Burns testified that Munson told them that he was with a friend, his co-defendant Darryl Clemons ("Clemons"), and that they both approached Cheeks' car. They took several items from Cheeks, including some cash, his coat and his watch. They ordered Cheeks to drive to the expressway, and then, because the vehicle was low on gas, they stopped at a gas station. Munson wanted to leave at that point, but was worried that Cheeks would report them to the police. After the stop at the gas station, Munson and Clemons told Cheeks to continue driving on the expressway. Some time later, they told him to exit and commanded him to pull into a vacant lot near a viaduct. Cheeks panicked and the gun discharged twice. Munson and Clemons started to leave the scene.

Concerned that he may have left fingerprints inside the car, Munson decided to destroy the car. He and Clemons purchased gasoline, poured it on the car's dashboard, and, using a lighter, set the car on fire. Munson burned his face in the process. Terry Merriweather ("Merriweather"), the paramedic who examined Munson after he was taken to jail, testified that when she asked Munson if he was Cheeks' killer, he said he was and explained that he burned his face during the incident. A firearms examiner with the Chicago police department testified that the copper jacket retrieved from the car could have been fired from a .357 Magnum Colt revolver, the type of gun in Munson's possession when the police searched Burks' car; however, the examiner could not claim a definite match. Based on the evidence presented, the jury found Munson guilty of the crimes charged. On the advice of counsel, and after an extensive admonishment by the court, Munson elected bench sentencing and was sentenced to death.

## II.    LEGAL STANDARDS

### A.    HABEAS STANDARD

Under the Antiterrorism and Effective Death Penalty Act ("AEDPA"), this court may grant Munson's request for habeas relief with respect to any claim decided on the merits by the state court only if the court's decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." *See* 28 U.S.C. § 2254(d)(1); *Williams v. Taylor,* 529 U.S. 362, 404-05 (2000). A state court's decision is "contrary to" clearly established Supreme Court precedent "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law" or "if the state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite to [it]." *Id.* at 405; *see also Price v. Vincent,* 123 S.Ct. 1848, 1853 (2003).

A state court's decision is an "unreasonable application" of clearly established Supreme Court precedent "if the state court identifies the correct governing legal rule from this Court's cases but unreasonably applies it to the facts of a particular prisoner's case" or "if the state court either unreasonably extends a legal principle from our precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." *Williams,* 362 U.S. at 407. A state court's application of Supreme Court precedent must be more than incorrect or erroneous, it must be "objectively" unreasonable. *See id.* at 410 ("An *unreasonable* application of federal law is different from an *incorrect* application ...") (*emphasis in original*); *see also Yarborough v. Gentry,* 124 S.Ct. 1, 4 (2003) (same). For a state court

decision to be considered unreasonable under this standard, it must lie "well outside the boundaries of permissible differences of opinion." *Hardaway v. Young*, 302 F.3d 757, 762 (7th Cir. 2002); *see also Henderson v. Briley*, 354 F.3d 907, 909 (7th Cir. 2004) ("question before a federal court on collateral review ... is only whether the state court's decision was so far out-of-bounds as to be 'unreasonable.'").

## B.    PROCEDURAL DEFAULT

Before a federal court will consider a habeas corpus petition, a petitioner must satisfy several procedural requirements. First, he must exhaust state remedies, by offering the state's highest court an opportunity to address each claim. *O'Sullivan v. Boerckel,* 526 U.S. 838, 839 (1999).   To satisfy this requirement, a petitioner must fairly present to the state tribunal both the operative facts and legal principles that control each claim. *See Wilson v. Briley,* 243 F.3d 325, 327 (7th Cir. 2001).

Second, the petitioner must comply with state procedural rules to avoid procedurally defaulting his claims.  Accordingly, a habeas claim may be defaulted if the state court rests its judgment on an independent and adequate finding of procedural default under state law. *See Stewart v. Smith,* 536 U.S. 856, 860 (2002); *see also Wright v. Walls,* 288 F.3d 937, 947 (7th Cir. 2002) (waiver is an independent and adequate state procedural ground in Illinois).  Moreover, failure to appeal the dismissal of an issue raised in a post-conviction petition in Illinois state court will be treated as an independent and adequate state ground (as if a state court had actually found the claims procedurally barred), thus preempting further habeas review in federal court. *Boerckel*, 526 U.S. at 839.  A federal court, however, may excuse a procedural default if a petitioner can show cause for the default and actual prejudice as a result of the alleged violation

8

of federal law, or if he can demonstrate that failure to consider the claim will result in a fundamental miscarriage of justice. *Coleman v. Thompson,* 501 U.S. 722, 750 (1991). With these standards in mind, the court will address Munson's claims.

## III. MUNSON'S NON-CAPITAL HABEAS CLAIMS

### A. INEFFECTIVE ASSISTANCE OF TRIAL COUNSEL FOR TRIAL COUNSEL'S FAILURE TO CHALLENGE ARREST (Claim # 1)

Munson's first claim for habeas relief is that trial counsel was ineffective for failing to challenge Munson's arrest on Fourth Amendment grounds. The police arrested Munson based on information provided by Burks and Curry. There was no warrant for his arrest. Munson contends that the authorities lacked probable cause to make the arrest.

This court notes that the Supreme Court has held that a Fourth Amendment violation may not serve as the basis for habeas relief, provided that the petitioner had a full and fair opportunity to litigate the claim in state court. *See Stone v. Powell,* 428 U.S. 465, 494-95 (1976). Munson does not present this claim as a Fourth Amendment issue; rather, he sets forth a Sixth Amendment violation, due to trial counsel's failure to object to the arrest. The Seventh Circuit Court of Appeals has held that no prejudice to a defendant exists when evidence gathered in violation of the Fourth Amendment is erroneously admitted at trial. *See Holman v. Page,* 95 F.3d 481, 491-92 (7th Cir. 1996). In this case, Munson's underlying Fourth Amendment claim is without merit. *See Kimmelman v. Morrison,* 477 U.S. 365, 382 (a meritorious Fourth Amendment claim is necessary for petitioner's success in a Sixth Amendment claim). Therefore, he has clearly not suffered any prejudice with respect to the admission of evidence that he alleges violated his Fourth Amendment rights.

9

Ineffective assistance of counsel claims are governed by *Strickland v. Washington*, 466 U.S. 668 (1984). To establish an ineffective assistance of counsel claim, Munson must prove two components: first, that counsel's performance was deficient, consisting of "errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment"; second, that these errors prejudiced the defense, by being "so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Strickland*, 466 U.S. at 687. If Munson is unable to demonstrate both *Strickland* prongs, his ineffective assistance claim will not succeed. *Id.*

In Munson's case, the Illinois Supreme Court determined that probable cause existed for the arrest. *See Munson II*, 206 Ill.2d at 124. Thus, according to the *Munson II* court, Munson was not prejudiced by trial counsel's decision not to attempt to quash the arrest. *See id.* Probable cause has been defined as facts that would lead a reasonable man to conclude that a crime has probably been committed, and that the suspect probably committed it. *See Beck v. Ohio*, 379 U.S. 89, 91 (1964). Probable cause is a "practical, nontechnical conception affording the best compromise that has been found for accommodating ... often opposing interests," *Id.*, *citing Brinegar v. U.S.*, 338 U.S. 160, 176 (1940). Evidence of probable cause is a bar to a false arrest action under Illinois law. *See Terket v. Lund*, 623 F.2d 29, 31 (7th Cir. 1980).

The standard for granting habeas relief is whether the state court's decision was an unreasonable application of clearly established Supreme Court precedent. *See* 28 U.S.C. § 2254 (d)(1); *Williams*, 529 U.S. at 404-05. The Illinois Supreme Court's decision does not fall into this category. The *Munson II* court reviewed the circumstances of Munson's arrest, and found that probable cause existed. *See Munson II*, 206 Ill.2d at 122-124. The court cited sufficient

10

evidence of the reliability of information provided to the police by Burks, including the burn marks on Munson's face and the gun found in Munson's possession, which Burks allegedly sold to Munson hours before the murder of Cheeks. *See id.* Because the court found probable cause, Munson was not prejudiced by his trial counsel's decision not to object to the warrantless arrest; thus, he has not established a Sixth Amendment violation. *See Strickland*, 466 U.S. at 687 (petitioner must meet both prongs of test to succeed on ineffective assistance claim). There is no reasonable probability that, even if Munson's counsel had challenged the arrest, the result would have differed. *See id.* at 695. Accordingly, the state court's decision is at least "minimally consistent" with the case's particular facts and circumstances, *see Hammer v. Karlen*, 342 F.3d 807, 810 (7th Cir. 2003), and this court denies Munson's request for relief with respect to Claim # 1.

### B. DENIAL OF DUE PROCESS BY PROSECUTION'S OFFERING OF FALSE AND MISLEADING EVIDENCE (Claim # 2 and Claim # 5)

Claims # 2 and # 5 in Munson's habeas petition both allege that the State violated his due process rights, by offering false and misleading evidence at trial, in violation of *Napue v. Illinois*, 360 U.S. 24 (1959). In Claim # 2, Munson contends that the State presented misleading evidence, by allowing the jury to believe that Curry did not expect a reward for information he offered regarding Cheeks' murder; in Claim # 5, his contention is that the State allowed Merriweather to perjure herself at trial, by testifying that Munson admitted to her that he had killed Cheeks.

Regarding Claim # 2, Munson alleges that the prosecution knew that, when Curry contacted Cheeks' family, he was seeking a reward for information about Cheeks' death. He argues that the State should have shared this information with Munson, and should have

presented this information at trial.

It is true that the prosecution is forbidden from knowingly presenting false or misleading evidence and from allowing false testimony to go uncorrected when it appears. *See Napue*, 360 U.S. at 269; *see also U.S. v. Saadeh*, 61 F.3d 510, 523 (7th Cir. 1995) (internal citations omitted). A conviction obtained through the use of false or misleading evidence violates a defendant's due process rights, and often must be reversed. *See id.* To warrant the reversal of a conviction, the misleading evidence must be material, meaning that there must be a "reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *U.S. v. Bagley*, 473 U.S. 667, 682 (1985). A reasonable probability is one that is sufficient to undermine confidence in the trial's outcome. *See id.*

The Illinois Supreme Court reviewed the merits of Munson's Claim # 2. It concluded that the State neither created a false impression nor failed to correct one. *See Munson II*, 206 Ill.2d at 147-48. Curry was cross-examined by defense counsel regarding his motives for revealing his conversation with Munson, and did not testify regarding any expectation of receiving a reward from Cheeks' family; thus, according to the *Munson II* court, no impression on that issue could have been conveyed to the jury. *See id.* This is a reasonable application of *Napue*. In addition, Munson has not proven that the State knew of Curry's expectation of a reward. If the State did not know that Curry was actually seeking such a reward, there is no *Napue* violation. *See Napue*, 360 U.S. at 269 (prosecution must *know* that the evidence is false). Finally, even if Munson had been able to prove that the State acted knowingly, he has not demonstrated that this is material information. A defendant's due process rights are violated only when the information at issue is material, that is, reasonably likely to affect the outcome of the

trial. *See Bagley*, 473 U.S. at 682

In the instant case, the jury was presented with extensive evidence of Munson's guilt, including evidence of his own confession, physical evidence, and testimony from Merriweather regarding his admission to her. It is unlikely that, even if the jury knew of Curry's alleged motivation in contacting the Cheeks family, the result of the proceeding would have differed. There is no allegation that Curry was lying about what Munson told him; thus, even if the jury heard testimony about the reward offered, it is unlikely that this would have been sufficient to outweigh the overwhelming evidence against Munson.

Again, this court may only disturb the decision of the Illinois Supreme Court if it was objectively unreasonable. *See Woodford v. Visciotti*, 537 U.S. 19, 25 (2002). Because this court finds that Munson has not proven that the State created a false impression in violation of *Napue*, the Illinois Supreme Court's decision on the issue was at least "one of several equally plausible outcomes." *See Searcy v. Jaimet*, 332 F.3d 1081, 1089 (7th Cir. 2003), and a grant of habeas relief would be inappropriate. Thus, Munson's Claim # 2 fails.

Claim # 5 is similar to Claim # 2 in that it also involves an allegation of the State presenting false or misleading evidence. Munson claims that, at the hearing to suppress Merriweather's testimony, Merriweather testified that she could not remember speaking with Munson about the crime; however, at trial, she gave detailed testimony about Munson's confession to her. He asserts that he has produced evidence corroborative of his claim, which confirms that jail procedures and policies at the time prohibited physical examination of inmates by jail staff of the opposite sex. Finally, he contends that the State knew that one of Merriweather's statements was false, and, as a result, the State presented false testimony in

13

violation of Munson's due process rights.

The Illinois Supreme Court found that Munson did not make the requisite showing that the State knowingly failed to correct perjured testimony. *See Munson II*, 206 Ill.2d at 148. The evidence that Munson submitted to support his claim consisted of affidavits from jail inmates stating that they had neither been examined by female paramedics, nor seen female paramedics examine male inmates. He did not present evidence of the prison's official policy on this matter. Thus, according to the *Munson II* court, "these affidavits do not adequately support defendant's contention that Merriweather perjured herself." *Id.* Furthermore, an additional review of the state court record does not demonstrate that Merriweather perjured herself. Merriweather's testimony at the suppression hearing does not contradict her testimony at trial. During the suppression hearing Merriweather never stated that Munson did not confess to her; she could not recall the exact sequence of events during the examination, but never indicated that he did not tell her about the murder of Cheeks. Her testimony at trial may have been more detailed, but this is likely because she was asked more detailed questions at trial.

Munson, as the party challenging the state court conviction, has the burden to show that the state court applied the case to the facts in an unreasonable manner. *See Price*, 123 S.Ct. at 1853 (internal citations omitted). He has not met this burden. The Illinois Supreme Court's decision that Burt did not adequately prove that Merriweather testified falsely is reasonable. The court thus concludes that Munson is not entitled to a writ of habeas corpus based on Claim # 5.

**C.    DENIAL OF DUE PROCESS BY PROSECUTION'S FAILURE TO DISCLOSE CRIMINAL RECORD OF PROSECUTION WITNESS (Claim # 3)**

In Claim # 3, Munson asserts that the State denied him due process by failing to disclose the criminal records of Curry, thus denying Munson the opportunity to impeach him with these records. He also claims that the State engaged in this same practice with respect to Burks and Vivurette, who were not ultimately called as witnesses. His contention is that this behavior violated the rule in *Giglio v. U.S.*, 405 U.S. 150 (1972).[4]

*Giglio* expanded the rule in *Brady v. Maryland*, 373 U.S. 83 (1963), that the prosecution may not knowingly withhold evidence helpful to the defense, to encompass evidence tending to affect the credibility of a witness. *See Giglio*, 405 U.S. at 153-54 (internal citations omitted). In order to be granted a reversal and new trial, a defendant must show that the impeachment evidence is material. *See id.* at 154. As stated above in Part IV.B, *supra*, information is material if it carries a reasonable likelihood of affecting the jury's verdict. *See Bagley*, 473 U.S. at 682. In *Giglio*, the evidence at issue was material. The prosecution failed to disclose an agreement to offer leniency to its key witness in exchange for his testimony. *See Giglio*, 405 U.S. at 150-51. Without the testimony of this witness, the prosecution essentially had no case. *See id.* at 154-55.

In Munson's case, the Illinois Supreme Court resolved this issue by relying on a state rule of evidence. *See Munson II*, 206 Ill.2d at 147. In Illinois, witnesses in criminal cases may generally be impeached only through the use of felony convictions. *See People v. Montgomery*, 47 Ill.2d 510, 516-17 (1971). The *Munson II* court determined that Curry had no such convictions in his record, and, as such, his credibility could not be impeached in this manner. *See Munson II*, 206 Ill.2d at 147. A review of Curry's criminal records confirms this conclusion.

_____

[4] Munson did not cite *Giglio* or any other cases in his habeas petition; all of his supporting cases are mentioned for the first time in his reply to the State's answer. The State correctly reasoned that Munson was asserting a *Giglio* violation.

This does not violate the rules set forth in *Giglio* and related cases. *Giglio* did not specifically define what type of impeachment evidence must be disclosed, only that the evidence must be material. *See Giglio*, 405 U.S. at 154. Munson has cited no Supreme Court precedent, nor has this court discovered any, which forbids a state from following this kind of rule. The type of evidence at issue in the instant matter could still be material, but, as in *Giglio*, only when there is a reasonable likelihood that the jury would have decided differently. *See id.*

In Munson's case, it is not likely that the verdict would have changed, even if Curry could have been impeached with his criminal record. As stated above, the jury heard ample testimony about the murder, including evidence of Munson's own confession and other corroborative material. Because Curry's criminal background was not material, there is no *Giglio* violation. Thus, the Illinois Supreme Court's decision on this issue was not unreasonable. *See Rice v. McCann*, 339 F.3d 546, 548-59 (7th Cir. 2003) (federal court must uphold state supreme court's finding unless "objectively unreasonable") (internal citations omitted). This court declines granting Munson's habeas petition as to Claim # 3.

### D. DENIAL OF EQUAL PROTECTION BY PROSECUTION'S USE OF PEREMPTORY CHALLENGES IN A DISCRIMINATORY MANNER (Claim # 4)

Next, Munson claims that he was denied his equal protection and due process rights when the State used peremptory challenges in a racially discriminatory manner, in violation of *Batson*, 476 U.S. 79.

*Batson* established the proposition that the Equal Protection Clause of the U.S. Constitution prohibits the prosecution from excluding potential jurors on the basis of race. *See id.* at 89. To prevail on a *Batson* claim, a defendant must establish a *prima facie* case of

purposeful racial discrimination, by showing that he is a member of a cognizable racial group and that the prosecution has exercised peremptory challenges to remove venire members who are of defendant's race. *See id.* at 96. The defendant is entitled to rely on the fact that the use of peremptory challenges constitutes a jury selection practice that permits "those to discriminate who are of a mind to discriminate." *Id., citing Avery v. Georgia*, 345 U.S. 559, 562 (1953). Trial courts must consider all relevant factors in assessing such claims, including patterns of strikes and the prosecution's comments and questioning during *voir dire. See id.* at 96-97. If a defendant makes a *prima facie* case of purposeful discrimination, the burden then shifts to the prosecution to offer a race-neutral justification for the challenges at issue. *See id.* at 97. The trial court will then decide whether the opponent of the strike (the defendant) has proven racial discrimination. *See id.* at 98.

Cases following *Batson* have clarified what type of explanation the State may offer to meet its burden of showing a race-neutral justification. The State's explanation need not be persuasive or even plausible, as long as it is not inherently discriminatory. *See Hernandez v. New York*, 500 U.S. 352, 360 (1991); *Purkett v. Elem*, 514 U.S. 765, 769 (1995) ("a legitimate reason is not a reason that makes sense, but a reason that does not deny equal protection.")

In the instant case, the State exercised peremptory challenges to exclude three African-American potential jurors from the venire.[5] The jury that was eventually impaneled in Munson's

---

[5] Apparently the prosecution did not think that one of the three jurors, Sandra McElwee, was African-American. The prosecutor thought that she may have been Caucasian or Hispanic. Ms. McElwee later submitted an affidavit that was attached to Munson's post-conviction petition, stating that she is African-American, and has been mistaken for Hispanic, but never for Caucasian.

case consisted of ten Caucasians and two African-Americans.[6] Munson challenges the State's strikes of Robert Canady ("Canady"), Ola Love ("Love") and Sandra McElwee ("McElwee"). On direct appeal, Munson challenged the removals of Canady and Love, and on appeal from the denial of post-conviction relief, he reiterated these challenges and also contested the removal of McElwee. The trial court found that Munson had made a *prima facie* case of racial discrimination. *See Munson I*, 171 Ill.2d at 175. However, that court ultimately decided that the State's explanations did not demonstrate an inherently discriminatory intent and ultimately upheld the removals. *See id.*

With respect to Canady, one of the prosecutors stated that she felt she knew him, possibly from a previous case, and also noted his hesitancy when asked if he would be able to sign a guilty verdict. Regarding Love, the State noted that this venire member never made eye contact with the prosecutors or even looked at the prosecution's table. This raised a 'red flag' and caused the prosecutors to perceive Ms. Love as hostile to the State. *See id.* at 179. Finally, the State could not offer a specific reason for removing McElwee, but one of the prosecutors apparently believed that McElwee was not African-American. *See Munson II*, 206 Ill.2d at 116-17.

The Illinois Supreme Court affirmed the trial court's decision on the *Batson* issue. *See Munson I*, 171 Ill.2d at 182; *Munson II*, 206 Ill.2d at 120. The court conducted a careful review of the equal protection challenges lodged by Munson, and ultimately determined that the reasons offered by the State were race-neutral, and that the trial court's findings were not clearly erroneous. Specifically, the Illinois Supreme Court noted the trial court judge's own

---

[6] Munson is African-American, thus *Batson* would apply to the prosecution's attempt to remove other African-American venirepersons from the venire. *See Batson*, 476 U.S. at 96 (potential equal protection violation occurs when prosecution attempts to remove from the venire members of defendant's race).

observations of the venirepersons and the prosecutors, and concluded that no equal protection violation occurred. *See Munson I*, 171 Ill.2d at 182. This court may only overturn those findings if they were objectively unreasonable. *See Yarborough*, 124 S.Ct. at 4.

This court cannot say that the state court's findings were objectively unreasonable. The Illinois Supreme Court identified the correct Supreme Court precedent and applied it appropriately. *See Munson I*, 171 Ill.2d at 174-75 (decision cites to *Batson, Hernandez,* and other relevant precedent). Even if this court disagreed with the state tribunal's decision, it may not grant habeas relief unless that decision was objectively unreasonable. *See McFowler v. Jaimet*, 349 F.3d 436, 455 (7th Cir. 2003) ( federal court "may not use the writ of habeas to effectively overrule" state court simply because of disagreement with state court's decision). Because it cannot be said that the Illinois Supreme Court's decision was objectively unreasonable, Munson's request for habeas relief with respect to his *Batson* claim is denied.

### E. DENIAL OF DUE PROCESS/INEFFECTIVE ASSISTANCE OF COUNSEL BY COUNSEL'S ADVICE TO BE TRIED BY *WITHERSPOON-QUALIFIED* JURY (Claim # 6)

With respect to Claim # 6, Munson asserts that he received ineffective assistance of counsel when his trial attorneys allowed him to be tried by a death-qualified jury, a jury that had been questioned on their willingness to return a death sentence.[7] His claim is that such a jury was prone to conviction, and that, had such a jury not been impaneled, the outcome of the proceedings would have been different. To the extent that this claim challenges the imposition of the death sentence, it is moot. *See, e.g., People v. Lucas*, 203 Ill.2d 410 (2003) (commutation

---

[7] On May 3, 1993, Munson's counsel filed a motion to prevent the State from *Witherspooning* the jury; however, the trial court denied this motion.

removes judicially imposed sentence replacing it with executively imposed sentence); *People v. Miller*, 203 Ill.2d 433 (2003) (same).

As the State correctly recognizes, this claim was never presented to the Illinois Supreme Court. Thus, Munson has not given "the state courts a meaningful opportunity to pass upon the substance of the claims later presented in federal court," *Rodriguez v. Scillia*, 193 F.3d 913,916 (7th Cir. 1999), *citing Picard v. Connor*, 404 U.S. 270, 275 (1971). As a result, this claim is procedurally defaulted, and this court should review the merits only if Munson can demonstrate either cause and prejudice or a fundamental miscarriage of justice. *See Coleman*, 501 U.S. at 750; *Anderson v. Cowan*, 227 F.3d 893, 899-90 (7th Cir. 2000). Munson has not argued cause and prejudice or a fundamental miscarriage of justice to overcome the procedural default; therefore, this court is not obligated to review the claim's merits.

Even if the claim had been properly presented in state court, it would fail. The evidence that Munson cites in support of his proposition that conviction by a *Witherspoon*-qualified jury is unconstitutional consists of studies and reports. He has cited no Supreme Court precedent prohibiting this practice. As the State noted in its answer to Munson's habeas petition, several years prior to Munson's trial the Supreme Court decided that states are not constitutionally forbidden from using death-qualified juries in capital proceedings. *Lockhart v. McCree*, 476 U.S. 162, 165 (1986). Thus, even if Munson's counsel had successfully objected to this practice, the trial court would not have been likely to uphold such a challenge. Under *Strickland*, Munson would need to show that, but for counsel's errors, there is a reasonable probability that the outcome of the proceedings would have been different. *See Strickland*, 466 U.S. at 694. Even if Munson could show deficient performance, he has not proven prejudice. He has not

demonstrated a reasonable likelihood that a non-*Witherspoon* qualified jury or the judge would have been less likely to convict him. Because Munson's Claim # 6 is both procedurally defaulted and without merit, this court will not grant habeas relief.

### F. INEFFECTIVE ASSISTANCE OF COUNSEL WHEN TRIAL COUNSEL 'ABANDONED' DEFENSE AND COURT REFUSED TO APPOINT NEW COUNSEL (Claim # 7)

Next, Munson contends that he was denied his Sixth Amendment right to effective assistance of counsel when, according to Munson, his trial counsel 'abandoned' him, and the trial court refused to appoint new counsel. It appears from the record that Munson moved for new counsel after his trial attorneys suggested that he waive a jury for sentencing. At one point, Munson's counsel recommended that he waive a sentencing jury, but then changed this recommendation. However, toward the end of the trial, counsel once again suggested that Munson might fare better with bench sentencing. After he was convicted, Munson waived his right to be sentenced by a jury. The court admonished Munson repeatedly about his decision to forego a jury for sentencing, and gave him multiple opportunities to consider this choice. Ultimately, the trial court was convinced that the waiver was voluntary.

It is not completely clear whether Munson is now basing his ineffective assistance claim on trial counsel's advice regarding the sentencing jury, or on other behavior of counsel. He presented this claim to the Illinois Supreme Court, but cited only to Illinois law. *See Munson I*, 171 Ill.2d at 199-200. It is questionable whether Munson met his fair presentment obligation. *See Momient-El v. DeTella*, 118 F.3d 535, 538-39 (7th Cir.1997) (internal citations omitted). Even if this court assumes that Munson complied with the fair presentment requirement, this claim fails.

The *Munson I* court determined that Munson did not cite specific actions of his trial counsel in support of his ineffective assistance of counsel claim. *See Munson I*, 171 Ill.2d at 201-02. When Munson moved for appointment of new counsel, the trial court attempted to ascertain the basis for the claim, giving him the opportunity to offer support for the argument. *See id.* at 200-01. Munson claimed then, as he does now, that his allegation of ineffective assistance required the immediate appointment of new counsel. However, he could not, and still does not, offer any clear legal precedent for this proposition.

If he is now basing this claim on counsel's advice to waive a jury for sentencing, the claim fails. Whether or not counsel gave poor advice by suggesting such a waiver, Munson was thoroughly admonished by the trial court of the potential consequences of foregoing the right to be sentenced by a jury. *See id.* at 203. The trial court found that Munson reached the ultimate decision knowingly and voluntarily. Though defendants are entitled to assistance of counsel, the ultimate decision on certain major issues may be exercised personally, provided that the defendant has been adequately informed of his options. *See Wallace v. Davis*, - - - F.3d - - -, 2004 WL 595410, * 6 (7th Cir. 2004). In this case, throughout the course of the trial, Munson's attorneys provided him with information about the advantages and disadvantages of electing jury sentencing versus bench sentencing. In the end, Munson voluntarily chose bench sentencing. He cannot now claim prejudice due to his own decision.[8]

Furthermore, this court must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689.

---

[8] As an additional note, if the only prejudice that Munson alleges is his sentence, this claim fails. As explained in Part III.E, *supra*, Munson is no longer under a death sentence, and cannot claim prejudice based on his sentence.

Munson has not overcome the presumption that this conduct was a matter of trial strategy. *See id.* At some point, Munson's attorneys learned that Judge Singer might be less likely than a jury to impose a death sentence. For this reason, counsel suggested that Munson elect bench sentencing. Munson has not demonstrated how counsel's advice to forego jury sentencing amounted to deficient performance under *Strickland.*

If the claim is not based on the sentencing jury waiver, it is not clear what the exact basis for the claim is. At trial, when Munson was pressed to specify what actions of his attorney formed the basis of his claim, Munson explained that he felt more peremptory challenges should have been exercised (counsel exercised six out of a total of fourteen available) and also that he wanted certain pictures used as mitigation evidence returned to him. *See Munson I,* 171 Ill.2d at 201. The *Munson I* court agreed with the trial court, that Munson's counsel had been vigorous and enthusiastic, and appeared to fulfill his duty toward Munson, and rejected this claim. *See id.* at 202-03.

Other than the issue of the jury waiver, Munson has not explained how trial counsel rendered deficient performance. Without such a showing, he cannot meet the tests for ineffective assistance of counsel set forth in either *Strickland,* 466 U.S. 668 or *U.S. v. Cronic,* 466 U.S. 648 (1984) (presumed prejudice test). Again, under AEDPA, this court cannot reverse the Illinois Supreme Court's decision unless that decision was either contrary to Supreme Court jurisprudence or an unreasonable application of clearly established Supreme Court precedent. *See Williams,* 529 U.S. at 404-05. In this case, the Illinois Supreme Court's decision was not contrary to Supreme Court precedent; therefore, no habeas relief is granted with respect to Claim # 7.

**G.    VIOLATION OF FIFTH AMENDMENT RIGHT TO REFUSE TO TESTIFY BY PROSECUTION'S IMPROPER COMMENT ON MUNSON'S SILENCE (Claim # 8)**

In Claim # 8, Munson contends that the State deprived him of due process by improperly commenting on his decision not to testify, a right guaranteed to him by the Fifth Amendment. Specifically, Munson cites two instances from the State's closing argument and the closing rebuttal argument. In closing, one of the prosecutors instructed the jurors that it was their duty to determine the credibility of witnesses. During the closing rebuttal, the prosecutor referred to Munson as an eyewitness to the crime, in contradiction to Munson's claim that there were no witnesses.

It is well-established that the prosecution may not directly comment on a defendant's decision not to testify. *Griffin v. California*, 380 U.S. 609, 614 (1965) ("[T]he Fifth Amendment . . . in its bearing on the States by reason of the Fourteenth Amendment forbids . . . comment by the prosecution on the accused's silence.") However, the Supreme Court has not expressly prohibited the prosecution from commenting on such silence indirectly, or from responding to comments made by the defense. *See Yancey v. Gilmore*, 113 F.3d 104, 106 (7th Cir. 1997). Munson must present "a Supreme Court case to support his claim, and that Supreme Court decision must have clearly established the relevant principle as of the time of his direct appeal." *Id.* at 106-07.

Munson has not cited a Supreme Court decision directly on point. Indirect references to a defendant's silence, such as through comments on the state of the evidence or responses to claims made by defense attorneys, are not forbidden by the Supreme Court. *See Freeman v. Lane*, 962 F.2d 1252, 1260 (7th Cir. 1992) ("Comments by the prosecutor . . . that may indirectly

24

refer to the defendant's silence . . . have not been the subject of Supreme Court guidance"). The Illinois Supreme Court, finding that the issue had been waived but still conducting a merits review, decided that the prosecutor's comments were proper. *See Munson II*, 206 Ill.2d at 145-46. In order to obtain habeas relief, Munson would need to demonstrate that this decision is "so far out-of-bounds as to be 'unreasonable.'" *Henderson*, 354 F.3d at 909 (internal citations omitted). Munson has not made the required showing; thus, this court denies his request for habeas relief as to Claim # 8.

## IV.    REQUEST FOR EVIDENTIARY HEARING

Finally, Munson contends that an evidentiary hearing under 28 U.S.C. § 2254(e)(2) is warranted to further develop his claims. Federal habeas courts, however, are not an alternative forum for trying facts and issues that a habeas petitioner did not pursue in state court. *See Williams*, 529 U.S. at 437. Section 2254(e)(2) provides that, if a factual basis of a claim was not developed in the state court, the federal habeas court cannot hold an evidentiary hearing unless the petitioner can show:

> (A) the claim relies on –
>
>> (i) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or
>>
>> (ii) a factual predicate that could not have been previously discovered through the exercise of due diligence; and
>
> (B) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.

28 U.S.C. § 2254(e)(2).

Munson does not argue that there is a new rule of constitutional law that was previously

unavailable to him. Therefore, he must establish that the failure to develop the factual record in state court, if any lack of development exists, was not his fault. *See Williams*, 529 U.S. at 432. He has not explained how the factual record may be lacking in development, and thus, he does not meet the first prong of the strict test set forth in 28 U.S.C. § 2254(e)(2).

Even if this court were to find that there is some sort of factual predicate that has not been developed, Munson must meet the second prong of this statute. To do so, he would have to allege facts that are sufficient to establish by clear and convincing evidence that, but for the constitutional error, no reasonable factfinder would find him guilty of the murder at issue. *See Harris v. McAdory*, 334 F.3d 665, 669-70 (7th Cir. 2003). He has not met this standard. Munson, therefore, has failed to make the requisite showing for an evidentiary hearing pursuant to 28 U.S.C. § 2254(e)(2). Thus, the court denies his request for a hearing.

## I. CONCLUSION

For the foregoing reasons, Munson's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 is denied. Any pending motions are denied as moot. This case is terminated.

**IT IS SO ORDERED**:

Date: 4/13/04          Enter _____
                       **MARVIN E. ASPEN**
                       **United States District Judge**